**EDITORIAL MUSICAL LATINO AMERICANA, S.A., Plaintiff,**

v.

**MAR INTERNATIONAL RECORDS, INC. and Arturo Sanchez, Defendant.**

No. 92 Civ. 9298 (RWS).

United States District Court, S.D. New York.

July 16, 1993.

Silverman & Shulman, P.C., New York City, for plaintiff; Alan L. Schulman, of counsel.

Cohen, Pontani, Lieberman & Pavane, New York City, for defendants; Martin B. Pavane, of counsel.

## OPINION

SWEET, District Judge.

The defendants Mar International Records, Inc. ("MAR") and Arturo Sanchez ("Sanchez") have moved under Rule 12(b)(2), Fed.R.Civ.P., to dismiss the complaint of Editorial Musical Latino Americana, S.A. ("Editorial") or alternatively to transfer the action under 28 U.S.C. 1404(a) to the Central District of California. For the reasons set forth below, the motions are denied.

### Prior Proceedings

This action was initiated on December 28, 1992 by the filing of a complaint by Editorial alleging that MAR and Sanchez wilfully infringed Editorial's copyright by making and distributing a phonorecord "La Tropa Chicana" on which MAR is listed as a distributor.

The instant motion was heard and considered submitted on April 14, 1993.

### The Facts

While there is a factual dispute as to the conduct of MAR and Sanchez, the Editorial affidavits establishing that the Phonorecord was purchased in New York on June 11, 1992 from Telestar Records & Tapes, 155 West 14th Street, New York, New York, are unrebutted.

The Phonorecord stated, "Manufactured by MAR International Records, Inc." and "Distributed by Disco Azteca Distributors" and "Mar International Distributors." Four other MAR records were purchased, one of which contained a label stating, "A Production of Humberto and Arturo Sanchez for: Mar International Records, Inc." and "Manufactured and Distributed by Mar International Records, Inc." At least four retailers sell MAR records in New York.

According to the submission by MAR and Sanchez, Discos Azteca is a related company and MAR's exclusive distributor in the United States.

Sanchez is President of MAR and Humberto Sanchez ("Humberto") is its Chief Executive Officer. Both are residents of California, City of Stockton. Sanchez has never been present in New York and Humberto has visited the State of New York on two occasions in the last five years, both in connection with business concerns unrelated to MAR.

MAR is a California corporation with its principal place of business in Stockton. It also conducts business in a Los Angeles office and is engaged in the business of recording and promoting musical groups. MAR is not incorporated in the State of New York nor qualified to do business here. It has no subsidiaries incorporated or qualified to do business in the State of New York nor does it have any personnel, employees, offices or property here, nor has it contracted to distribute its goods in New York.

Neither MAR, Sanchez nor Humberto have any bank accounts or other tangible personal or real property located in the State of New York.

### A Sufficient Showing of Jurisdiction Has Been Made

■ In order to demonstrate personal jurisdiction sufficiently to defeat a motion to dismiss, a plaintiff need only make a prima facie showing that jurisdiction exists. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985). Plaintiff's complaint and affidavits are to be construed, and any doubts are to be resolved in the light most favorable to the plaintiff. *See id.; Shube's Mfg. Corp. v. Blake Bros. Int'l, Inc.,* 1990 Corp.L.Dec. (CCH) ¶ 26,535 at 23,169 (S.D.N.Y.1990); *see also Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (on motion to dismiss pleadings are considered in light most favorable to pleader).

Here, the jurisdictional analysis is the same for both MAR and its president, Sanchez, who can be held individually liable for his acts of infringement. *See, e.g., Lauratex Textile Corp. v. Allton Knitting Mills, Inc.,* 517 F.Supp. 900 (S.D.N.Y.1981) (corporate president and shareholder personally liable for copyright infringement).

■ To determine personal jurisdiction over a non-domiciliary in a federal question case, this Court applies the long-arm statute of the forum state. *See Business Trends Analysts v. Freedonia Group, Inc.,* 650 F.Supp. 1452, 1455 (S.D.N.Y.1987); *United States v. First Nat'l City Bank,* 379 U.S. 378, 381, 85 S.Ct. 528, 530, 13 L.Ed.2d 365 (1965).

New York's long-arm statute provides:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state. . . .

N.Y.Civ.Prac.L. & R. § 302(a) (McKinney 1993) ("CPLR § 302(a)").

■ Offering one copy of an infringing work for sale in New York, even if there is no actual sale, constitutes commission of a tortious act within the state sufficient to imbue this Court with personal jurisdiction over the infringers. *See Business Trends,* 650 F.Supp. at 1455–56 (shipment of one copy into New York; actual sale not necessary); *Metropa Co. v. Choi,* 458 F.Supp. 1052, 1054 (S.D.N.Y.1978) (trademark infringement; only New York contact of California defendant was mail order shipment of two wigs); *Honda Assocs., Inc. v. Nozawa Trading,*

*Inc.,* 374 F.Supp. 886, 888–89 (S.D.N.Y.1974) (trademark infringement, actual sale not necessary; only New York contact of California defendant was mail order shipment of 3 karate uniforms valued at $37). This Court has jurisdiction even if the products for sale are offered through independent brokers in New York. *See* CPLR 302(a) ("in person or *through an agent* "); *Heritage House Frame & Moulding Co. v. Boyce Highlands Furniture Co.,* 88 F.R.D. 172, 173 (E.D.N.Y.1980).

██ Further, there is a prima facie showing that MAR has contracted to supply goods in this state and are thus subject to jurisdiction pursuant to the "contracts anywhere" clause in CPLR 302(a)(1). Proof of one transaction is sufficient. *See Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 198–99, 522 N.E.2d 40, 42–44 (1988). Contracting with a distributor to distribute an infringing work in New York renders personal jurisdiction proper under this section. *See Lipton v. Nature Co.,* 781 F.Supp. 1032, 1035–36 (S.D.N.Y.1992); *see also Business Trends,* 650 F.Supp. at 1455 n. 8 (shipping one copy into New York is sufficient). From the defendants' submission and the appearance of records in retail stores in New York, it can be inferred that MAR has a contract with its affiliated company and exclusive distributor, Discos Azteca, to supply the infringing Phonorecord in New York.

In *Asahi Metal Industry Co. v. Superior Court of Cal.,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the Court applied the well-established due process standard for personal jurisdiction over a defendant not physically present within the forum, that such defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). Sufficient "minimum contacts" are established when "the defendant's conduct and connection with the forum State are such that he should reasonable anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100

S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). These minimum contacts must be based upon "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State. . . ." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958)). The Court's analysis in *World– Wide Volkswagen* is instructive in the instant case:

> Hence if the sale of a product of [an out-of-state] manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve *directly or indirectly,* the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

444 U.S. at 297–98, 100 S.Ct. at 567 (emphasis added).

██ MAR's phonorecords are currently being offered for sale by at least four New York retailers, who were also selling MAR's product last spring at the time the infringing Phonorecord was purchased.

The owners of MAR, including Sanchez, also own MAR's exclusive United States distributor, Discos Azteca, which distributed the infringing Phonorecord into New York. A phonorecord bearing the MAR label, different from the Infringing Phonorecord, purchased in New York, bore the legend "Manufactured and Distributed by Mar International Records, Inc." Ramirez Aff. ¶ 3.

The critical inquiry for due process is whether the manufacturer sought to serve, "directly or indirectly," the market for its phonorecords in New York. *See World– Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct.

at 567; *Montalbano v. Easco Hand Tools, Inc.,* 766 F.2d 737, 742 (2d Cir.1985).

The facts here establish prima facie jurisdiction.

*Montalbano's* stream-of-commerce test remains the law in this Circuit as well as elsewhere. *See, e.g., Irving v. Owens–Corning Fiberglas Corp.,* 864 F.2d 383, 385–86 (5th Cir.), *cert. denied,* 493 U.S. 823, 110 S.Ct. 83, 107 L.Ed.2d 49 (1989) (following *World–Wide Volkswagen* and rejecting Justice O'Connor's *Asahi* plurality); *DeMoss v. City Market, Inc.,* 762 F.Supp. 913, 198 (D.Utah 1991); *Hall v. Zambelli,* 669 F.Supp. 753 (S.D.W.Va.1987) ("the theory continues to have precedential value"); *cf. Vermeulen v. Renault, U.S.A., Inc.,* 975 F.2d 746, 757 n. 18 (11th Cir.1992) (acknowledging continued application of stream of commerce standard in several courts).

New York has a significant interest in protecting copyright holders from the sale of infringing goods in New York.

■ A corporate president who has a financial interest in the company and the ability to supervise or control an infringing activity will be held personally liable. *See Lauratex Textile,* 517 F.Supp. at 900. Thus, the fiduciary shield doctrine has no application to Sanchez.

By causing and directing the manufacture and distribution of the Infringing Phonorecord, Sanchez has committed a tort in New York, and maintains the same contacts with New York as does MAR. Accordingly, he is likewise subject to his Court's personal jurisdiction.

*Thomson McKinnon Sec., Inc. v. Hamiltonian Indus., Inc.,* 610 F.Supp. 5 (S.D.N.Y. 1985), notes that this Court has interpreted *Calder* as completely rejecting the fiduciary shield doctrine in *Guccione v. Flynt,* 1984 Corp.L.Dec. (CCH) ¶ 25,654 at 18,947 (S.D.N.Y.1984).

■ Three years after *Thomson,* the New York Court of Appeals carefully studied the history and application of the fiduciary shield doctrine, and rejected it. *See Kreutter,* 71 N.Y.2d at 467, 527 N.Y.S.2d at 195, 522 N.E.2d 40. The Court's holding, which this Court is bound to follow, could not be clearer: "we hold the fiduciary shield rule is not available to defeat jurisdiction under the New York long-arm statute ...." 71 N.Y.2d at 472, 527 N.Y.S.2d at 202, 522 N.E.2d 47.

### Venue Is Proper In This District

■ The copyright venue statute governs the venue of this action, as follows:

Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights may be instituted in the district in which the defendant or his agent resides or may be found.

28 U.S.C. § 1400(a). It is well-established that a defendant "may be found" in any district in which he is subject to personal jurisdiction; thus, venue and jurisdiction are coextensive. *See, e.g., Lipton,* 781 F.Supp. at 1035; *Business Trends Analysts,* 650 F.Supp. at 1456.

■ The party seeking venue transfer bears the significant burden of making a clear and convincing showing that a case should be transferred. *See Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *Lipton,* 781 F.Supp. at 1036 ("heavy burden"—copyright infringement action); *Rolls–Royce Motors, Inc. v. Charles Schmitt & Co.,* 657 F.Supp. 1040, 1060 (S.D.N.Y.1987) ("clear cut showing" required). The plaintiff's choice of forum is accorded great weight and must be deferred to unless the balance of conveniences strongly favors defendants: "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Lipton,* 781 F.Supp. at 1036 (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)); *see also Shube's,* 1990 Corp.L.Dec. (CCH) ¶ 26,535 (copyright infringement action). In considering a motion to transfer, a court will consider factors such as the convenience of the parties and the witnesses. *See id.,* 1990 Corp.L.Dec. (CCH) ¶ 23,171.

■ In order to meet its burden, the motion of the party seeking transfer must specifically list the evidence and witnesses on

which the party intends to rely in the transferee district, along with a general statement of the topics of each witness' testimony. *See Factors,* 579 F.2d at 218; *Rolls–Royce,* 657 F.2d at 1060. Absent such showing, the motion should be denied. *See Factors,* 579 F.2d at 218.

Without a prescription of the value or the relevance of this action of the records and evidence in California, this Court cannot assess if their location relates at all to the venue of this action.

■ Editorial's witnesses (employees and officers of its licensing and collecting agent, The Harry Fox Agency, Inc.) are located in this district, as are the documents germane to its case. In addition, defendants' acts of infringement were committed in New York. Thus, even if MAR and Sanchez made a proper showing that they had witnesses and evidence in California, transfer would be inappropriate since it would merely shift the inconveniences from one party to another. *See Van Dusen v. Barrack,* 376 U.S. 612, 645–46, 84 S.Ct. 805, 824, 11 L.Ed.2d 945 (1964); *Lipton,* 781 F.Supp. at 1036; *Shube's,* 1990 Corp.L.Dec. (CCH) ¶ 23,171. In *R.F.D. Group Ltd. v. Rubber Fabricators, Inc.,* 323 F.Supp. 521, 528 (S.D.N.Y.1971), though plaintiffs did not reside in New York and defendants, its witnesses and documentary evidence were alleged to all be present in West Virginia, the balance of conveniences was held to be a "standoff" since the acts at issue occurred in New York and plaintiff's witnesses were likely to be in New York. Transfer was refused because the plaintiffs' choice of forum favored retention of the case. *Id.*

Finally, the request to transfer this case to the Central District of California is justified only by the location of MAR's California counsel because MAR and Sanchez are located in Stockton, California, which is in the Eastern District of California.

### Rule 11 Sanctions Are Not Warranted

In the absence of any showing of bad faith and given the difficulty of this area of the law, sanctions are inappropriate.

### Conclusion

The motions to dismiss and in the alternative to transfer are denied.

It is so ordered.