**EXCELSIOR COLLEGE, Plaintiff,**

v.

**Charles M. FRYE, Professional Development Systems School of Health Sciences, and West Haven University, Defendants.**

**No. 1:03–CV–219.**

United States District Court, N.D. New York.

Feb. 12, 2004.

Heslin Rothenberg Farley & Mesiti P.C. (Robert E. Heslin, Esq., David P. Miranda, Esq., Lee Palmateer, Esq., of counsel), Albany, NY, for Plaintiff.

Young, Sommer, Ward, Ritzenberg, Baker & Moore, LLC (Sonya Del Peral, Esq., of Counsel), Albany, NY, for Defendants.

### MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. INTRODUCTION

Plaintiff Excelsior College ("Excelsior") filed a complaint in this matter on February 20, 2003, alleging copyright infringement, Lanham Act violations, false advertising, and various related causes of action. In lieu of answering defendants Charles M. Frye, ("Frye"), Professional Development Systems School of Health Sciences ("PDS"), and West Haven University ("West Haven") (collectively "defendants") moved to dismiss the complaint for lack of personal jurisdiction or, in the alternative, to transfer venue to the Southern District

of California.[1]  Oral argument was heard on July 25, 2003, in Albany, New York. Decision was reserved.

## II.  FACTS

The following facts are as set forth in the complaint unless otherwise noted.  Excelsior is a New York corporation with its principal place of business in Albany, New York. Excelsior is chartered by the Board of Regents of the University of the State of New York. It offers associate, baccalaureate, and masters degrees in a variety of subject areas including nursing, which is at issue here. Its associate and baccalaureate degree programs in nursing are accredited by the National League for Nursing Accrediting Commission.

Excelsior's degree programs, including its nursing degrees, are presented in a non-traditional manner.  That is, students are provided with a "content guide" from which they study and testing is done at regional testing centers.  Students receive credit when a test is complete, and when sufficient credits are accumulated a degree is conferred.  There are no teachers, no classrooms, and no clinical training.  Excelsior's trademarks, content guides, and examinations for the nursing programs are allegedly protected by copyright.

PDS and West Haven are California corporations, doing business at Cypress, California.  Frye was the sole proprietor of each of these entities before their incorporation.  Frye asserts that the corporate forms of PDS and West Haven neither conduct business nor have any assets.  Defendants assert that the only business being conducted is by the sole proprietorships.

Defendants also offer various distance-learning degree programs, including nursing.  They offer training programs, including classroom teaching, in order to prepare students for testing by other entities, such as Excelsior.  Students pay a fee to defendants, as well as enroll (and pay the tuition fee) in another educational institution from which the degree will eventually be granted.

Excelsior alleges that defendants used its content guide in developing PDS and West Haven's nursing curricula, and copied a substantial portion of the content guide and used it in a submission to obtain approval of PDS and West Haven programs from the appropriate California higher education authorities.  Excelsior further alleges that PDS and West Haven University have embedded certain codes into their web sites' source code so that an internet search for "Excelsior College" yields the PDS and West Haven web sites. Excelsior contends that these actions infringe its rights as set forth in the allegations of the complaint.

## III.  DISCUSSION

### A.  Motion to Dismiss for Lack of Personal Jurisdiction

■■■ In order to determine whether personal jurisdiction exists, it must be determined if defendants fall within the reach of New York's long-arm statute and if so whether such jurisdiction comports with due process, by meeting the minimum contacts and reasonableness requirements set forth in World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).  Plaintiff need only make a prima facie showing of personal jurisdiction to defeat a dismissal motion. Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc., 829 F.Supp. 62, 64 (S.D.N.Y.1993).  Affidavits may be considered and the facts must be viewed in

---

**1.** Defendants initially contended further that service of process was inadequate, but abandoned this basis for dismissal when personal service was effected.

the light most favorable to plaintiff. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985).

### 1. *New York's Long Arm Statute*

■ Personal jurisdiction over a defendant is determined by the law of the jurisdiction in which the district court sits, in this instance, New York. *Id.* New York's long arm statute provides in relevant part:

a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or 2. commits a tortious act within the state ...; or 3. commits a tortious act without the state causing injury to person or property within the state.

N.Y. C.P.L.R. § 302(a) (McKinney 2001) ("CPLR"). "Under [CPLR § 302], a single transaction of business is sufficient to confer jurisdiction, even if the defendant never entered New York, 'so long as the defendant's activities [in New York] were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" *Motorola Credit Corp. v. Uzan,* 274 F.Supp.2d 481, 575 (S.D.N.Y. 2003) (quoting *Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 198–99, 522 N.E.2d 40, 43 (1988)).

Defendants contend that plaintiff cannot satisfy the requirements of New York's long arm statute. However, Excelsior points to the defendants' web site to show that they transact business within the state of New York, with students who reside here. West Haven has had at least three students and PDS has had at least seven students who resided in New York State. The web site provides chat rooms for student communications, a study hall, and on-line training sessions. It permits students to log in to their personal account and conduct transactions relating to that account including enrollment, payment of fees, and obtaining course materials. These facts constitute a prima facie showing that defendants transact business within the state. *See Citigroup Inc. v. City Holding Co.,* 97 F.Supp.2d 549, 565–66 (S.D.N.Y.2000) (finding specific personal jurisdiction under CPLR § 302(a)(1) where defendant's web sites were interactive, allowing, for example, customers in New York to apply for loans and chat online). Moreover, if, as plaintiff alleges, defendants' nursing study guides infringe plaintiff's work, then offering them for sale in New York (via the web site) is sufficient to confer personal jurisdiction over the defendants. *See Editorial Musical Latino Americana, S.A.,* 829 F.Supp. at 64–65; *see also Citigroup Inc.,* 97 F.Supp.2d at 567 (finding that an on-line chat "transmission of messages that contain allegedly infringing marks to New York residents" was an attempt to pass off the offending mark within New York State, therefore supporting jurisdiction under CPLR § 302(a)(2)). Finally, PDS and West Haven admit that they have enrolled ten New York residents in programs. Further, they derive significant income in interstate commerce, through the interactive web site. Thus they are subject to jurisdiction under the contract anywhere to provide goods and services within the state clause of CPLR § 302(a)(3). *See Editorial Musical Latino Americana, S.A.,* 829 F.Supp. at 65. Defendants are subject to personal jurisdiction under the New York long-arm statute.

### 2. *Compliance with Due Process*

After determining that the Northern District of New York may exercise personal jurisdiction over defendants via New York's long arm statute, further analysis of whether such an exercise of long-arm jurisdiction comports with due process is

required. Two requirements must be met in order to satisfy due process.

First, the defendant must have "certain minimum contacts [with the forum] ... such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 152 (2d Cir.2001). Second, "the assertion of personal jurisdiction [must] comport with traditional notions of fair play and substantial justice—that is, ... it [must be] reasonable under the circumstances of the particular case." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir.2002).

*Motorola Credit Corp. v. Uzan*, 274 F.Supp.2d at 576.

### a. *Minimum Contacts Requirement*

■ As to the first requirement, "it is well established that New York's long arm requirement of doing business is more restrictive than the requirement of minimum contacts." *Purdue Pharma L.P. v. Impax Labs., Inc.*, No. 02 Civ. 2803(SHS), 2003 WL 22070549, at * 4 (S.D.N.Y. Sept. 4, 2003); *see Andrulonis v. United States*, 526 F.Supp. 183, 189 (N.D.N.Y.1981). Since Excelsior established the requirements of the New York long arm statute, it likewise has that defendants have sufficient minimum contacts with the state of New York to satisfy the first prong of the due process test.

### b. *Reasonableness Requirement*

■ In assessing the reasonableness inquiry, five factors must be considered: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering social substantive policies. *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 568 (2d Cir.1996). Once a plaintiff has established minimum contacts, jurisdiction will be exercised unless the "defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985)).

Some burden will be imposed upon defendants if they are required to defend this action in the Northern District of New York. They contend that appearance of crucial witnesses will be hindered and excessive and unnecessary legal fees and costs will be incurred. Although defendants give no specifics, it can be assumed that since Frye resides in and the businesses are located in California, this factor weighs in defendants' favor. However, for the same reasons that this forum imposes a burden upon defendants, plaintiffs will similarly be affected if personal jurisdiction in New York is found to be improper. Thus, these two factors balance.

Defendant contends that New York has little interest in adjudicating this matter since the majority of claims are brought pursuant to federal copyright, trademark, and unfair competition laws. On the other hand, plaintiff employs hundreds of New York residents, whose livelihood may be threatened by infringement, and New York has an interest in resolving matters concerning plaintiff's core business assets, trademarks, trade secrets, and copyrights. Further, New York has an interest in protecting college age residents from predatory trade practices. The New York interest in adjudicating the matter weighs in favor of finding jurisdiction proper.

Resolution of this matter would be of the same efficiency whether here or in Califor-

nia. Plaintiffs records and witness are here, while defendants' records and witnesses are there.

Defendants argue that the social policy of freedom of expression is implicated by this case. Frye alleges that this lawsuit was filed just sixteen days after he provided testimony criticizing Excelsior before the California Board of Registered Nursing, which was considering revoking its approval as an accredited nursing school. Even taking the allegation as true for the purposes of this motion, and agreeing with the assertion that the social policy of freedom of expression is important, it is inconceivable how accepting jurisdiction in New York would undermine that social policy. Thus, this factor does not weigh in defendants' favor.

Consideration of the five factors reveals that defendants have failed to meet their burden of establishing that traditional notions of fair play and substantial justice would be offended by retaining jurisdiction here.

Excelsior has established that defendants have sufficient contacts with this forum such that exercising jurisdiction comports with due process. Defendants failed to show that exercising jurisdiction would be unreasonable and therefore offensive to due process.

## B. Transfer of Venue to Southern District of California

A change of venue may be ordered, at the discretion of the court, "[f]or the convenience of parties and witnesses, in the interest of justice."[2] 28 U.S.C. § 1404(a); *Golconda Mining Corp. v. Herlands*, 365 F.2d 856, 857 (2d Cir.1966); *Lappe v. American Honda Motor Co., Inc.*, 857 F.Supp. 222, 229 (N.D.N.Y.1994),

*aff'd*, 101 F.3d 682 (2d Cir.1996). In determining whether to transfer an action, the court must consider

"[T]he convenience of the parties; the convenience of the witnesses; the relative ease of access to the sources of proof; the availability of the process to compel attendance of unwilling witnesses; the cost of obtaining willing witnesses; practical problems that make trial of a case easy, expeditious, and inexpensive; and the interest of justice."

*Lappe*, 857 F.Supp. at 229 (quoting *Aquatic Amusement Assocs., Ltd. v. Walt Disney World Co.*, 734 F.Supp. 54, 56 (N.D.N.Y.1990)). The convenience of nonparty witnesses is generally the most important factor. *Id.* at 234; *Coultman v. Nat'l R.R. Passenger Corp.*, 857 F.Supp. 231, 234 (E.D.N.Y.1994); *Dwyer v. General Motors Corp.*, 853 F.Supp. 690, 692 (S.D.N.Y.1994); *Gilbert v. Wilson*, 821 F.Supp. 857, 861 (N.D.N.Y.1993); *Arrow Elecs., Inc. v. Ducommun Inc.*, 724 F.Supp. 264, 265 (S.D.N.Y.1989); *Pellegrino v. Stratton Corp.*, 679 F.Supp. 1164, 1166–67 (N.D.N.Y.1988). Plaintiffs choice of forum is ordinarily given deference, unless there is little connection between the forum and the operative facts. *Lappe*, 857 F.Supp. at 229; *Coultman*, 857 F.Supp. at 236; *Dwyer*, 853 F.Supp. at 694; *Arrow Elecs., Inc.*, 724 F.Supp. at 265, 267. The relative means of the parties may also be considered. *Lappe*, 857 F.Supp. at 230. The moving party bears the heavy burden of establishing that the motion to transfer should be granted. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978); *Lappe*, 857 F.Supp. at 229.

Frye resides in the Southern District of California, and the two corporate defen-

---

**2.** Section 1404(a) also requires that the transferee court be a district where the action "might have been brought." There is no argument that the proposed transferee district, the Southern District of California, is a district in which the action might not have been brought. *See* 28 U.S.C. 1404(a).

dants have principal places of business there. Excelsior is located within the Northern District of New York. However, Excelsior, although based in New York, maintains Regional Assessment Centers in Long Beach, Orange, and Los Angeles, all located within the Southern District of California.

Defendants' witnesses would be inconvenienced if the venue for this matter remains in the Northern District of New York. Frye, a party witness, has been the sole proprietor of the businesses at issue, and his testimony would be important to both parties. Defendants also name several non-party witnesses, such as the in-house service manager, who would testify as to defendants' operations, and who would be inconvenienced by a trial in New York.

Plaintiff's witnesses, located in New York, would similarly be inconvenienced by a change of venue to the Southern District of California. Further, plaintiff argues that litigation in California would be more costly for all parties due to higher costs generally there than in central New York. (*See* Miranda Decl. ¶ 8 (citing the American Intellectual Property Law Assoc. economic survey published in 2001 for the proposition that the cost of litigating the intellectual property causes of action in this matter in California would be at least double the cost of litigation here).)

Likewise, defendants' documents and other sources of proof are located in California, while plaintiff's documents and other proof are located here. However, Excelsior does maintain offices and employees in California, which would facilitate access to its documents and other sources of proof there.

The locus of operative facts appears to be in the Southern District of California. Defendants reside there, and the alleged infringement occurred there and allegedly infringing materials were disseminated from there. Allegedly infringing material was submitted to the California Bureau for Private Postsecondary and Vocational Education ("Bureau") in California.

Defendants argue that many non-party student witnesses would not be subject to subpoena to testify in New York. They argue that the testimony would relate to the alleged infringement and procurement and use of plaintiff's claimed trade secrets. Defendants also contend that employees of the Bureau who would testify as to receipt of allegedly infringing materials could not be compelled to testify in New York.

The relative means of the parties appears not to weigh on either side, as both seem to have significant resources. Similarly, both forums have familiarity with the governing law of copyright and trademark infringement. It is also noted that plaintiff's choice of forum in the Northern District of New York would ordinarily be given substantial weight, except where, as here, there is little connection between the operative facts and this forum. *See Lappe*, 857 F.Supp. at 229.

In consideration of all the factors as set forth above, and giving due consideration to the inconvenience to non-party witnesses if venue were to remain here, it is apparent that in order to promote efficient resolution of this matter and in the interest of justice, venue should be transferred to the Southern District of California.[3]

## IV. *CONCLUSION*

Personal jurisdiction over defendants is conferred pursuant to New York's long-

---

**3.** Given the resolution of the request for a change of venue, it is unnecessary to consider defendants' argument that venue in the

Northern District of New York is improper under 28 U.S.C. § 1391(b), (c).

arm statute, CPLR § 302. Such jurisdiction comports with due process in that defendants have sufficient minimum contacts with New York and exercising jurisdiction is reasonable under the circumstances. However, given the totality of the circumstances and in the interest of justice a change of venue to the Southern District of California is appropriate.

Accordingly, it is

ORDERED that

1. Defendants' motion to dismiss for lack of personal jurisdiction is DENIED;

2. Defendants' motion to transfer venue is GRANTED; and

3. This matter is transferred to the Southern District of California.

IT IS SO ORDERED.